UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ALFRED MICHAEL SAARIO,

        Petitioner,

v.

BRYAN MORRISON,

        Respondent.
_____/

Case No. 1:21-cv-780

Honorable Paul L. Maloney

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.     **Factual allegations**

Petitioner Alfred Michael Saario is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Following a jury trial in the Iron County Circuit Court, Petitioner was convicted of second-degree murder, in violation of Mich. Comp. Laws § 750.317, and discharging a firearm in a building causing death, in violation of Mich. Comp. Laws § 750.234b(5). On September 28, 2017, the court sentenced Petitioner to concurrent prison terms of 25 to 40 years for second-degree murder and 7 years, 1 month to 40 years for discharging a firearm causing death.

The facts underlying Petitioner's convictions were summarized by the Michigan Court of Appeals as follows:

> Defendant shot and killed the victim, his adult stepdaughter, in his and his wife's home, late in the evening on June 22, 2016. Defendant and the victim disliked each other and had an extremely troubled relationship marked by calling each other derogatory names, physical altercations, and mutual avoidance whenever possible. Defendant never disputed shooting the victim; he claimed that he did so in self-defense and in defense of his wife.
>
> The victim struggled with an addiction to prescription pain medication, which she developed after her involvement in a severe car accident. The victim's house had no running water, but it did have electricity. The victim lived close to defendant, and she often visited to use the telephone, take showers, wash her laundry, and obtain drinking water. On the night of the shooting, defendant and his wife visited a local bar. Defendant consumed beer and two shots of liquor. The exact events that transpired after this were disputed. However, when defendant and his wife returned to their home, the victim was present, along with defendant's son and a friend of defendant's son. Defendant went to the upstairs bedroom and remained there for some time. Defendant's wife eventually went to the back porch to smoke, and the son and his friend went to the basement.
>
> Defendant claimed that later in the evening the victim burst into his bedroom, grabbed his phone, and fled downstairs. He claimed that, because of the prior physical altercations between himself and the victim and his knowledge that she was struggling with drug addiction, he grabbed his rifle from the closet, loaded two bullets into it, and went downstairs. He claimed he feared for his and his wife's safety. Defendant further claimed that he encountered the victim in the living room,

which was dark at the time. The victim made threatening remarks toward him and moved, prompting him to react by firing the rifle, striking the victim and killing her. Defendant then turned the rifle on his own head and pulled the trigger. He claimed that he had done so because he could not imagine how he would tell his wife that he had shot her daughter. He further claimed that, as he pulled the trigger, he changed his mind and moved his head slightly. Defendant survived, but he sustained severe, permanent, and readily apparent head injuries.

The jury was apparently unpersuaded by defendant's claims of self-defense and defense of his wife. He was charged with open murder, and the jury convicted him of the lesser offense of second degree murder. The jury also convicted him of intentionally discharging the firearm in the house causing the victim's death.

*People v. Saario*, No. 344842, at pp. 1–2 (Mich. Ct. App. Nov. 19, 2019), available at https://www.courts.michigan.gov/siteassets/case-documents/uploads/opinions/final/coa/20191119_c344842_31_344842.opn.pdf (visited Sept. 10, 2021).

Petitioner, with the assistance of counsel, appealed to the Michigan Court of Appeals raising the same issues he raises in his habeas petition. By opinion issued November 19, 2019, the court of appeals denied relief. Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, again raising the same issues. The Supreme Court denied leave by order entered September 29, 2020.

On August 13, 2021, Petitioner timely filed his habeas corpus petition in the United States District Court for the Eastern District of Michigan. That court transferred the petition here, where venue is proper. The petition raises two grounds for relief, as follows:

I. Petitioner was denied a fair trial in violation of the Fourteenth Amendment to the United States Constitution when his jury was given two different instructions on how suicide after shooting his step-daughter and the other instruction erroneously informed the jury that Petitioner had committed a crime for which he was not charged, but it could be considered to show criminal intent.

II. Petitioner was denied the effective assistance of trial counsel where his trial counsel did not object to the erroneous instruction.

(Pet., ECF No. 1, PageID.2.)

**II.     AEDPA standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Sterner v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

**III.  Discussion**

**A.  Improper jury instruction**

Petitioner contends that the trial judge erred when she read the standard instruction regarding evidence admitted under Rule 404(b). To establish a due process violation based on instructional error, Petitioner must show that the error infected the entire trial with unfairness. *Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law). To assess the extent of the "infection" courts have looked to how the instruction may have impacted fundamental rights, such as: the prosecution's burden to prove guilt beyond a reasonable doubt, see e.g., *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977) (court considered whether failure to read an instruction regarding a particular element relieved the prosecutor of the burden of proof),

6

and *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000) (same); the presumption of innocence, *see, e.g., Cupp v. Naughten*, 414 U.S. 141, 147–148 (1973) (court considered whether an instruction regarding a presumption of truthfulness shifted the burden of proof to the defendant and destroyed the presumption of innocence); or notice of the charges, *see, e.g., Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (court considered whether lesser-included offense instructions or aider and abettor instructions interfered with the defendant's right to notice). Arguably, to inform the jury that a defendant has engaged in other uncharged criminal acts could interfere with the presumption of innocence.[1]

      The court of appeals described the background relating to this issue as follows:

      Before trial, defendant and the prosecution both sought to admit evidence under MRE 404(b), pursuant to which evidence of past conduct may be admitted for any purpose other than solely to establish a person's character. See *People v Martzke*, 251 Mich App 282, 289–292; 651 NW2d 490 (2002). The prosecution sought to admit evidence of defendant's suicide attempt immediately following the shooting and "[a]ny rebuttal necessary for specific acts introduced by Defendant under MRE 404(b)." The trial court did not explicitly rule on the prosecution's motion, because defendant stipulated to the admission of his suicide attempt and that the prosecution could rebut any character evidence he introduced on his own behalf. Defendant sought to introduce evidence of a wide assortment of crimes committed by the victim and generally pertaining to her aggressiveness, including drug use, breaking and entering, and assaults. The trial court did not grant defendant's motion in its entirety, but it ruled, in relevant part, that defendant could introduce evidence of a 2012 violent altercation between the victim and defendant.

      Several witnesses testified that they knew defendant to be a peaceful and honest person. However, witnesses also testified that defendant had a propensity for a quick temper after drinking and that he often vocally wished for the victim's death and argued with her. The witnesses indicated that such remarks were "stupid comments," out of character for him, and essentially hyperbolic and not intended seriously. Nevertheless, there was some evidence introduced that defendant had been the initial physical aggressor in at least one significant altercation between himself and the victim, albeit after significant provocation, and both he and the victim sustained injuries. Defendant was arrested following the 2012 incident.

---

[1] In the instruction, quoted below, the court did not state that Petitioner had engaged in other criminal acts, only that the prosecutor had introduced evidence attempting to show that Petitioner had engaged in other uncharged criminal acts.

7

*Saario*, at p.3.  Having allowed admission of evidence under Rule 404(b) the trial court read the model instruction regarding that type of evidence:

> *You have heard evidence that was introduced to show that the Defendant committed a crime for which he is not on trial.*  If you believe this evidence, you must be very careful only to consider it for certain purposes.  You may only think about whether this evidence tends to show that the Defendant acted purposefully; that is, not by accident or mistake, or because he misjudged the situation.  You must not consider this evidence for any other purpose.  For example, you must not decide that it shows that the Defendant is a bad person or that he is likely to commit crimes.
>
> You must not convict the Defendant here because you think he is guilty of other bad acts or other bad conduct.  All the evidence must convince you beyond a reasonable doubt that the Defendant committed the alleged crimes, or you must find him not guilty.

*Id*. at pp. 3–4 (emphasis in original).

Petitioner contends the instruction rendered his trial unfair because he interprets the phrase "committed a crime for which he is not on trial" as applying to the suicide attempt.  He argued "'there was *no* evidence admitted at trial that [Petitioner] had committed any other criminal offenses.'"  *Id*. at p.4 (emphasis in original).[2]  Petitioner claimed, therefore, that the judge sent the jury to deliberate with an instruction erroneously telling them that Petitioner had committed a crime for which he was not on trial, a potentially highly significant error in a case that turned on Petitioner's credibility.

The court of appeals concluded that Petitioner's claim regarding the evidence admitted at his trial was simply wrong.  The appellate court found that there was additional evidence admitted that Petitioner committed a crime for which he was not on trial:

---

[2] Implicit in Petitioner's argument is an assertion that his suicide attempt was not a crime.  Although suicide might not be a crime in Michigan, shooting a firearm at a building can be.  *See* Mich. Comp. Laws § 750.234b(1).  The Michigan courts have concluded that the statutory use of the word "at" includes within its ordinary meaning to concepts of "toward the direction of" as well as "in, on, or near."  *People v. Wilson*, 585 N.W.2d 24, 26 (Mich. Ct. App. 1998); *see also* Mich. Model Crim. Jury Instr. 11.37b, Discharge of a Firearm in a Building.  Although Petitioner was charged with firing the shot that killed his step-daughter, he was not charged for firing the second shot.  That act, therefore, might also be considered "a crime for which he [was] not on trial."

> We reject defendant's contention in his brief on appeal that "there was no evidence admitted at the trial that [defendant] had committed any other criminal offenses" (emphasis in original). The jury heard testimony regarding an incident in which defendant and the victim physically assaulted each other and required police intervention. A witness testified that defendant was the first physical aggressor in the incident, so his conduct, as described, was at least potentially criminal. The jury was further informed that defendant was arrested following the incident. We are unable to conclude that the trial court's failure to adapt M Crim JI 4.11 to address the suicide attempt was an inadvertent oversight.
>
> Rather, we conclude that evidence was introduced of prior conduct by defendant that was unrelated to the instant charged offenses, and it posed a risk of inducing the jury to draw improper inferences as to defendant's character. It therefore constituted MRE 404(b) evidence. See *People v Jackson*, 498 Mich 246, 262-263; 869 NW2d 253 (2015). The instruction properly informed the jury that it should not use the 2012 incident to infer defendant's character or convict defendant on the basis of any prior misconduct. The instruction was relevant to evidence actually introduced and had the effect of protecting, rather than undermining, defendant's rights.

*Saario*, at p. 4 (footnote omitted). The court rejected Petitioner's claim, therefore, because the record did not factually support it.

To prevail, Petitioner must show that the court of appeals' factual finding is unreasonable on this record. He does not even make the attempt. In the brief supporting his petition, instead of attacking the court of appeals' determination, he simply repeats his prior arguments, doggedly insisting that the reference to "other criminal offenses" necessarily means the suicide attempt. Because Petitioner fails to meet his burden with respect to the state appellate court's factual determination, he is not entitled to habeas relief on this claim.

**B.    Ineffective assistance of counsel**

Petitioner next claims that his trial counsel rendered ineffective assistance because he failed to object to the instruction read by the trial judge. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of

9

reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The Michigan Court of Appeals determined that the Rule 404(b) evidence instruction was proper under state law. That conclusion binds this Court. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The court of appeals' determination that the trial court properly instructed the jury regarding Rule 404(b) evidence under state law is, therefore, axiomatically correct on habeas review.

Because the trial court acted properly under state law when she read the instruction and because Petitioner's claim that the instruction violated his due process rights is factually unsupported, the objection urged by Petitioner would have been meritless. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, any claim that counsel rendered ineffective assistance because he did not object, fails. Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   October 7, 2021                         /s/ Paul L. Maloney
                                                          Paul L. Maloney
                                                          United States District Judge